[Cite as *State v. Winfield*, 2020-Ohio-1418.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-19-1118

    Appellee                                  Trial Court No. CR0201003253

v.

John Winfield                                   **DECISION AND JUDGMENT**

    Appellant                                 Decided: April 10, 2020

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

John Winfield, pro se.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, John Winfield, appeals the May 7, 2019 judgment of the Lucas County Court of Common Pleas which denied appellant's postsentence motion to withdraw his *Alford* plea. Because the trial court did not abuse its discretion in denying the motion, we affirm.

{¶ 2} Appellant brings forth one assignment of error for our review:

Trial court abused its discretion by denying appellant's motion to withdraw his *Alford* plea, resulting in a violation of appellant's right to Due Process Equal Law and Fundamental Fairness and Effective Assistance of Counsel as guaranteed, by the 5th, 6th and 14th Amendment, United States Constitution; Section 10 and 16, Article I, Ohio Constitution.

{¶ 3} On December 21, 2010, appellant was indicted on one count of aggravated murder in violation of R.C. 2903.01(A) and (F), one count of aggravated murder in violation of R.C. 2903.01(B) and (F), and one count of aggravated robbery in violation of R.C. 2911.01(A)(1). All counts carried firearm specifications attached to them pursuant to R.C. 2941.145 and the aggravated murder counts had capital specifications pursuant to R.C. 2929.04(A)(7) attached to them.

{¶ 4} On October 8, 2013, appellant entered a plea according to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to the charge of aggravated murder in violation of R.C. 2903.01(B) with the attached firearm specification. As part of the plea agreement, all other charges and specifications were nolled by appellee and the parties agreed to a sentence of life imprisonment, with parole eligibility after 28 years.

{¶ 5} At the plea hearing, appellee stated that the victim, M.W., attended a house party at Dorcas Stephens' home, where heavy drinking was taking place. Appellant, his brother and codefendant Terrance Taylor, and their sister Deidre Taylor also attended the party at Dorcas Stephens' house. At some point during the party, appellant and his

2.

brother, Terrance Taylor, had an argument with M.W. They were later overheard discussing a plan to rob M.W. When M.W. heard of their plan, he tore off his jacket and announced he was not going to be robbed.

{¶ 6} Later that night, Taylor handed a gun to appellant who approached M.W. from behind. Appellant shot M.W. a total of five times, three times in the back and two times in the back of the head. M.W. later died from his injuries. Following the attack, Deidre Taylor was directed by appellant to go through M.W.'s pockets. She retrieved more than $300.

{¶ 7} Terrance Taylor was later found with that money in his wallet. One of the bills had M.W.'s DNA on it. He was convicted following a jury trial on one count of murder in violation of R.C. 2903.02(B) and 2929.02 and one count of aggravated robbery in violation of R.C. 2911.01(A)(1). The guilty verdicts also included findings of R.C. 2941.145 firearm specifications on both counts. His conviction was affirmed on appeal. *State v. Taylor*, 6th Dist. Lucas No. L-11-1202, 2013-Ohio-5182.

{¶ 8} At the plea hearing, appellant was informed by the trial court of the consequences of his plea in compliance with Crim.R. 11. The trial court reviewed the plea agreement with appellant, which in this case involved the standard plea form as well as two additional typed pages. The additional typed pages were signed and acknowledged on each page by appellant. These pages state that appellant will change his plea as to the second count and in return he would receive a specified sentence and appellee would nolle the other counts and specifications.

3.

{¶ 9} There is also a paragraph which states "Nothing in this agreement shall act as a bar to the defendant perfecting any legal remedies he may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct." At the plea hearing, there appeared to be some confusion as to the purpose of the paragraph regarding appellant's appellate rights. Upon discussion, it was explained to appellant that he was giving up certain appellate rights by entering an *Alford* plea and that the plea agreement did not limit the remaining appellate rights in any way. Appellant had an opportunity to speak with attorney to understand these aspects and indicated that he understood those rights.

{¶ 10} During the plea hearing, appellant was informed by the trial court of the constitutional rights he was waiving by agreeing to enter a plea such as the right to a trial by a jury of his peers. He was also informed of the maximum possible sentence for the charges he was going to be sentenced for. Appellant's counsel argued and ensured that appellant received the jail-time credit he earned after he was extradited and before he entered his plea. Appellant entered his plea, did not ask any questions, and indicated he was satisfied with the representation he received from counsel.

{¶ 11} At sentencing, appellant waived his right to a presentence investigation report and was granted 857 days of jail-time credit. Appellant sought additional jail-time credit for the time that he spent contesting extradition from Michigan. That request was denied by the trial court.

4.

{¶ 12} Appellant's conviction and sentence was affirmed by this court in *State v. Winfield*, 6th Dist. Lucas No. L-13-1251, 2014-Ohio-3968.

{¶ 13} On December 14, 2018, appellant filed a motion to withdraw his plea, more than five years after he first entered his plea. Appellant argued that his plea was less than knowingly, voluntarily, or intelligently made and that he suffered from ineffective assistance of counsel. Appellant notes that he was assigned five separate counsel in the two years his case was pending. Appellant argued that during one of the transitions between counsel, one counsel did not give an investigator's report to the next counsel. This investigator's report included interviews with witnesses that could have provided exculpatory evidence of appellant's innocence.

{¶ 14} Appellant also argues that he was subject to ineffective assistance of counsel because when the prosecutor admitted that there were evidentiary issues, appellant's counsel failed to further investigate or seek a continuance. Appellant also argues he received ineffective assistance of counsel because he was not properly informed about the consequences of his plea, counsel failed to rectify on the record that he would not be subject to multiple firearm specifications, counsel waived his right to have a presentence investigation report which resulted in appellant having fines imposed upon him, and counsel failed to adequately argue that he was entitled to additional jail time for the time he spent in Michigan prior to his extradition.

{¶ 15} Appellant filed three affidavits in support of his motion. Appellant submitted his own affidavit which essentially averred to the allegations he made in his

motion to withdraw his plea. Appellant also attached the affidavit of Theodore Wright who stated that he spoke to two investigators during the investigation of the case, and he told those investigators that a witness lied to the police about seeing appellant shoot M.W. Much of this affidavit revolves around Wright stating what Dorcas Stephens had told him on other occasions. The final affidavit is from Terrance Taylor who avers that he was in the house where M.W. was murdered and that he took the money from M.W.'s pockets without help from anyone else. Taylor also avers that he did not have any part in killing M.W. or giving a weapon to appellant. In response, appellee argued that trial counsel's performance was not deficient.

{¶ 16} The trial court denied appellant's motion to withdraw his plea because appellant's arguments surrounding counsel's performance were not supported by the record. The trial court also found that appellant failed to present evidence that the alleged errors by the defense affected appellant's knowledge or voluntariness when he entered his plea.

**Law**

{¶ 17} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1. A manifest injustice is a "clear or openly unjust act." *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998). "It is an extremely

6.

high standard reserved for only extraordinary cases." *State v. Thomson*, 6th Dist. Lucas No. L-18-1208, 2019-Ohio-3021, ¶ 9, citing *State v. Harmon*, 6th Dist. Lucas No. L-10-1195, 2011-Ohio-5035, ¶ 12. "'The defendant bears the burden of establishing the existence of manifest injustice.'" *Id*., citing *State v. Romero*, 156 Ohio St.3d 468, 2019-Ohio-1839, 129 N.E.3d 404, ¶ 13.

{¶ 18} We review a trial court's decision to deny a motion to withdraw a plea for an abuse of discretion. *Id*. An abuse of discretion "connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 19} "While an appellate court may decide an issue on grounds different from those determined by the trial court, the evidentiary basis upon which the court of appeals decides a legal issue must have been adduced before the trial court and have been made a part of the record thereof." *State v. Peagler*, 76 Ohio St.3d 496, 668 N.E.2d 489 (1996), paragraph one of the syllabus.

## Analysis

### *Res Judicata*

{¶ 20} Appellee argues that appellant's motion was barred by res judicata because he could have and should have brought these issues before this court on his direct appeal.

"[Res judicata], which operates to prevent repeated attacks on a final judgment, applies to any proceeding initiated after the final judgment of conviction and direct appeal, and to all issues that were or might have been

7.

previously litigated. A Crim.R. 32.1 motion filed after the time for appeal has passed is subject to res judicata and, if applicable, may be denied on those grounds."

(Citations omitted). *State v. Thomson*, 6th Dist. Lucas No. L-05-1213, 2006-Ohio-1224, ¶ 26.

{¶ 21} We find that appellant's motion to withdraw his plea was barred by res judicata. First, this court upheld the imposition of costs and fines and therefore any portion of appellant's motion that pertains to these issues is barred by res judicata.

{¶ 22} Further, all other issues appellant brings forward could have and should have been brought on the direct appeal of his conviction. The affidavits and the information presented in them were available to appellant when he filed the direct appeal from his conviction. The information regarding the ineffective assistance of trial counsel was also available to appellant at the time of his previous appeal. Appellant could have appealed the trial court's decision to deny appellant additional jail-time credit as well and failed to do so. Therefore, all of the issues presented by appellant should have been brought before this court in his direct appeal. Because he failed to bring those issues earlier, his motion to withdraw is barred by res judicata.

### Manifest Injustice

'A manifest injustice has been defined as a "clear or openly unjust act" and as "an extraordinary and fundamental flaw in the plea proceedings."'' Post-sentence withdrawal of a plea is permitted only in extraordinary

8.

circumstances. This high burden is necessary because we "recognize * * * that if a plea of guilty could be retracted with ease after sentence had been imposed, 'the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. * * *'''

(Citations omitted). *State v. Leon*, 6th Dist. Huron No. H-18-018, 2019-Ohio-1178, ¶ 51. An undue delay between the plea and the filing of the motion is an adverse factor "'affecting the credibility of the movant and militating against the granting of the motion.'" *Id*. at ¶ 52, quoting *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of syllabus.

{¶ 23} "An ineffective assistance of counsel claim must overcome the strong presumption that a properly licensed Ohio lawyer is competent." *Id*. at ¶ 54, citing *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62. To overcome this presumption, a claimant must show that trial counsel's performance fell below an objective standard of reasonable representation and that a reasonable probability exists that but for counsel's errors there would be a different outcome. *Id*. at ¶ 55, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 24} The trial court determined that there was insufficient evidence to demonstrate that counsel performed in a deficient manner. We find the trial court did not abuse its discretion in coming to this conclusion. Further, based upon our review of the

9.

record, we find that appellant did not demonstrate a manifest injustice warranting the postsentence withdrawal of his plea.

{¶ 25} We first note that appellant did not file his motion to withdraw until five years after he entered his *Alford* plea. Next, the record does not demonstrate that counsel's performance was deficient. During the plea hearing and in the plea agreement, appellant indicated he was satisfied with counsel's performance. The record does demonstrate counsel filing motions for discovery, the delivery of that discovery, and the preparation of transcripts from Terrance Taylor's trial for trial counsel's use. Appellant in response files his own self-serving affidavit. Based on the entire record and the evidence presented by appellant, the trial court did not abuse its discretion in determining appellant did not meet his burden in demonstrating trial counsel was deficient in its representation of appellant in regards to discovery and preparation for trial.

{¶ 26} Appellant also claims that his counsel was inefficient because counsel failed to filed further motions or seek further information after appellee indicated to the court there were some evidentiary issues which lead to the plea agreement. Appellant however does not point to any evidence that the outcome of the proceedings would have been altered had a continuance been made at this time. In fact, the evidentiary issues cited by appellee relate to factual issues that appellant may have contested had he decided to continue to trial rather than accept a plea agreement. Appellant fails to state that had counsel acted in a different manner, he would not have agreed to the plea agreement and taken his case to trial before a jury.

10.

**{¶ 27}** Appellant's trial counsel argued that appellant should be granted jail-time credit for his time spent in custody waiting for trial and for time waiting to be extradited to Ohio from Michigan. The trial court, upon agreement with appellee, granted appellant jail-time credit for his time spent in custody waiting for trial to begin. Appellant's counsel and arguments did not fall below an objectively reasonable standard in regards to the issue of jail-time credit.

**{¶ 28}** Appellant's sole assignment of error is not well-taken. Therefore, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Arlene Singer, J.

_____
JUDGE

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.